O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

CIVIL MINUTES - GENERAL

| Case No. | CV 10-3736 PSG (JCGx) | Date | January 11, 2011 |
|---|---|---|---|
| Title | Health Facilities of California Mutual Insurance Company, Inc. v. British American Insurance Group, Ltd., *et al.* | | |

Present: The Honorable Philip S. Gutierrez, United States District Judge

| Wendy K. Hernandez | Not Present | n/a |
|---|---|---|
| Deputy Clerk | Court Reporter | Tape No. |

Attorneys Present for Plaintiff(s):  Attorneys Present for Defendant(s):

Not Present  Not Present

**Proceedings:** (In Chambers) Order Dismissing the Case for Lack of Subject Matter Jurisdiction

On October 26, 2010, this Court issued an Order to Show Cause ("OSC") regarding the Court's subject matter jurisdiction. *See* Dkt. #74. Subject matter jurisdiction is allegedly appropriate based on the diversity of the parties. *See Compl.* ¶ 20. The Court, however, had concerns that HFC is not diverse from Defendants BAIG and Peter Myrtle, and raised the issue *sua sponte*. On November 8, 2010, Plaintiff filed a response to the Court's OSC, *see* Dkt. #76, to which Defendants British American Insurance Group, Ltd. and Peter Myrtle filed a reply on November 23, 2011, *see* Dkt. #78. Based on the following, the Court dismisses the case for lack of subject matter jurisdiction.

I.   Background

Plaintiff Health Facilities of California Mutual Insurance Company, Inc. ("Plaintiff" or "HFC") is an incorporated risk retention group within the meaning of 15 U.S.C. § 3901. *See First Amended Complaint* ("*Compl.*") ¶ 5. Defendants British American Insurance Group Limited ("BAIG") and Peter Myrtle are Louisiana citizens acting as reinsurance intermediaries. *See id.* ¶¶ 3, 6-7. A "reinsurance intermediary participates in securing the reinsurance, serves as a conduit for communications between the reinsurers and the reinsured, and transmits premium payments, payments of return premium and collects balances that are due." *Id.* ¶ 3.

As a captive insurance company, HFC is essentially an insurance company restricted to insuring the risks of its owners, which tend to be various health facilities within the state of

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-3736 PSG (JCGx) | Date | January 11, 2011 |
|---|---|---|---|
| Title | Health Facilities of California Mutual Insurance Company, Inc. v. British American Insurance Group, Ltd., *et al.* | | |

California. *See Mooneyham Decl.* ¶ 3. Generally speaking, insurance companies seeking to spread their own risks and liabilities may look to reinsurance companies for "insurance for the insurer." HFC entered into a reinsurance contract with certain other defendants (the "Reinsurer Defendants") to do just that. *See Compl.* ¶ 22. Before the Reinsurer Defendants precisely calculated the premiums, HFC provided a deposit upon execution of the reinsurance contract with the understanding that any excess deposit would be returned. *Id.* ¶ 24. The deposit and premiums paid by HFC were delivered to BAIG to forward to the Reinsurer Defendants. *Id.* ¶ 26. After the premiums on the reinsurance contract were calculated, HFC was allegedly owed $2,125,000 in excess deposit, $1,300,000 of which is currently due. *Id.* ¶ 30.

When HFC demanded payment of the money owed, one of the Reinsurance Defendants told HFC that it was instructed by BAIG to apply the money to future insurance premiums. *Id.* ¶ 31. HFC maintains that it never approved such an instruction and that, in addition, HFC has been billed separately for the future premiums on the reinsurance contract. *Id.* HFC sued, *inter alia*, BAIG, Myrtle and the Reinsurer Defendants.

As mentioned, BAIG and Peter Myrtle are citizens of Louisiana. With respect to HFC, the Complaint alleges that "Plaintiff HFC is a Nevada domiciled mutual insurance company organized, licensed and operated under the federal Liability Risk Retention Act of 1986 . . . and the captive insurance laws of the state of Nevada." *Id.* ¶ 5. The Complaint, however, is silent about HFC's principal place of business. All it says is that "HFC issued only professional and general liability insurance policies *to* California health facilities" and that "all of HFC's insurance transactions and risks are in California." *Id.* (emphasis added). It is undisputed that HFC's board of directors, President, Secretary and Treasurer direct, control and coordinate the management of the corporation. *Chase Decl.* ¶ 2-3, 6-9. The question is where they primarily operate from.

II. Legal Standard

Federal courts have subject matter jurisdiction over "controversies . . . between citizens of different states." U.S. Const. Art. III, § 2. Congress has provided the meaning of diversity as contemplated by the Constitution, including where corporations are parties to a lawsuit. Specifically, "the federal diversity jurisdiction statute provides that 'a corporation shall be a citizen of any state by which it has been incorporated *and* of the state where it has its principal place of business." *Hertz Corp. v. Friend*, ___ U.S. ___, 130 S. Ct. 1181, 1185 (2010) (quoting 28 U.S.C. § 1332(c)(1)). Thus, a corporation has dual citizenship and is a citizen of both (1) its

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-3736 PSG (JCGx) | Date | January 11, 2011 |
|---|---|---|---|
| Title | Health Facilities of California Mutual Insurance Company, Inc. v. British American Insurance Group, Ltd., *et al.* | | |

state of incorporation and (2) its principal place of business. To remain diverse for purposes of diversity subject matter jurisdiction, neither the state of incorporation nor the principal place of business can be the same as the citizenship of any of the opposing parties.

Until recently, "principal place of business" had a rather elusive meaning. In some circuits, it meant the "nerve center," or the place where a corporation's officers direct, control and coordinate the activities of the business. *See Hertz*, 130 S. Ct. at 1191. In other circuits, diversity of the parties depended on an analysis of a corporation's "total activities" and where a plurality of business takes place in order to find a corporation's "center of gravity." *Id.* at 1187-88, 91.

Seeking a "more uniform interpretation of the statutory phrase," and overall "simplicity," the Supreme Court opted for the "nerve center" test. *Id.* at 1192-93. More specifically, the principal place of business of a corporation is a single place within a state where "the officers direct, control, and coordinate the corporation's activities." *Id.* Generally, this will be the corporation's "headquarters" if the headquarters meets that definition. *Id.* at 1192. The Court cautioned, however, that the principal place of business is not simply the place or "an office where the corporation holds its board meetings," but the single—meaning "main, prominent or leading"—place of direction, control, and coordination. *Id.*

Finally, the Court notes that the burden of persuasion for establishing diversity of the parties is on the party asserting it: here, HTC. *Id.* at 1194. When challenged on issues of subject matter jurisdiction, the asserting party must support the jurisdictional allegations with "competent proof." *Id.*

III.   Discussion

After this Court's October 26, 2010 OSC, HFC provided the following evidence in support of its jurisdictional allegations: (1) there are seven members of HFC's board of directors who control, coordinate and direct the corporation's activities: four based in various parts of California, two in Louisiana and one in Nevada; (2) two outside vendors run the day to day financial, regulatory and claims operations from Colorado and Texas, respectively; and (3) the board has convened board meetings in California, Nevada or via telephone conference, but never in Louisiana. *See Chase Decl.* ¶¶ 3, 6; *Mooneyham Decl.* ¶¶ 4-9; *Mosier Decl.* ¶¶ 2,5. Plaintiff's evidence also revealed that its President and Secretary, Ronald Goux, is based in Louisiana, while its Treasurer works out of California. *See Chase Decl.* ¶ 3. Defendants BAIG

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-3736 PSG (JCGx) | Date | January 11, 2011 |
|---|---|---|---|
| Title | Health Facilities of California Mutual Insurance Company, Inc. v. British American Insurance Group, Ltd., *et al.* | | |

and Myrtle provided sworn declarations, also in response to the Court's OSC, showing that HFC's physical and mailing address was listed on the HFC website as Louisiana, that HFC's President and Secretary Ronald Goux and Director Timothy Goux's office was at that same address, and that contracts were negotiated, premiums were delivered and bank accounts were established all from that address. *See Myrtle Decl.*, Ex. C.

Based on all the evidence, the Court cannot conclude that Plaintiff has carried its burden to persuade the Court that complete diversity of the parties exists in this case. The board makes decisions, at least in part, on conference calls where four of the seven board members are physically in California and three are not. Perhaps this is the exact situation the Supreme Court in *Hertz* predicted would make for a difficult case. *See Hertz*, 130 S. Ct. at 1194 ("there will be hard cases . . . in this era of telecommuting, some corporations may divide their command and coordination functions among officers who work at several locations, perhaps communicating over the Internet"). Nevertheless, the Court must be persuaded that a single place within a state where direction, control and coordination originates is not within the same state that creates the citizenship of an opposing party. In this case, the Court is not so persuaded.

Despite the requirement in *Hertz* that a plaintiff must identify the *single place within a state* where a corporation maintains its principal place of business, Defendants correctly point out that Plaintiff failed to do so here. *See Hertz*, 130 S. Ct. at 1192-93. Instead, Plaintiff argues that because a majority of the board of directors are located in California—four of the seven—and because board meetings have taken place in California or over the phone, then the principal place of business must be somewhere in California. *See Pl's OSC Response* 5:23-6:12, 10:2-6. That is simply not enough.

The only place identified as holding the offices of more than one relevant person is Louisiana, where HFC's President, Secretary and Director were located. *See Myrtle Decl.* Ex. C. Moreover, Defendants provide evidence that the same place where HFC's President and Director had their offices is the place that HFC identified on its website as its only physical address. *See id.* Defendants also provide evidence suggesting that HFC's principal place of business was a specific place within Louisiana (2045 Highway 59, Mandville, Louisiana 70448).[1] Plaintiff, on the other hand, only provides evidence that four members of the board are

---

[1] This conclusion is supported by the fact that "the office in Mandeville, LA, is the only office in which individuals with signing authority on HFC's bank accounts were located . . . [where] the Reinsurance Services Agreement was negotiated . . . [and where] all deposit premiums at issue

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-3736 PSG (JCGx) | Date | January 11, 2011 |
|---|---|---|---|
| Title | Health Facilities of California Mutual Insurance Company, Inc. v. British American Insurance Group, Ltd., *et al.* | | |

somewhere in California—no single place is identified—and that HFC has called its members to meet in California for some board meetings. The Supreme Court specifically stated, however, that the principal place of business of a corporation is not simply "an office where the corporation holds its board meetings," but the *single place* of direction, control and coordination. *Hertz*, 130 S. Ct. at 1192. Similarly, the allegations that "HFC issued only professional and general liability insurances policies to California health facilities" and that "all of HFC's insurance transactions and risks are in California," *see Compl.* ¶ 5, say nothing about the place from which HFC was controlled. At most, those allegations speak to the Corporation's "center of gravity," a diversity consideration dispensed with in *Hertz, see Hertz*, 130 S. Ct. at 1187-88, 91.

      Plaintiff's failure to carry its burden to identify the single principal place of business of HFC is fatal to its assertion of federal subject matter jurisdiction. Further, it appears that HFC's actual principal place of business is where HFC's President, Secretary and Director operated, which is the address listed on its website as the physical address of the corporation. Accordingly, Plaintiff HFC shares citizenship with Defendants BAIG and Peter Myrtle and the Court's basis for subject matter jurisdiction is destroyed. As a result, the Court DISMISSES the case for lack of subject matter jurisdiction.

      **IT IS SO ORDERED.**

---

in this litigated originated [and] . . . were delivered." *Reply* 3:10-16.